*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTTON BREWER,

    Plaintiff-Appellee,

v

PAUL ADAMS and ALLSTATE INSURANCE
COMPANY,

    Defendants,

and

CHIPPEWA VALLEY SCHOOLS,

    Defendant-Appellant.

UNPUBLISHED
March 16, 2026
10:07 AM

No. 374512
Macomb Circuit Court
LC No. 2024-000138-NI

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK , JJ.

PER CURIAM.

Defendant, Chippewa Valley Schools, appeals by right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) (immunity granted by law) and (C)(10) (no genuine issue of material fact) in the underlying auto negligence claim brought by plaintiff, Antton Brewer. We affirm.

## I. BACKGROUND

This case arises from a collision between plaintiff's vehicle and an empty school bus driven by Paul Adams, a school bus driver for defendant. Just before the collision, Adams was traveling southbound on Romeo Plank Road in the center turn lane intending to turn left across two northbound lanes of traffic into Immanuel Lutheran School's parking lot. The left northbound lane, abutting the center turn lane, was backed up with bumper-to-bumper traffic, but the right northbound lane, farthest from the center turn lane, ended shortly north of Immanuel Lutheran's

-1-

parking lot driveway. Plaintiff was traveling in the right northbound lane, despite Adams testifying that the lane is usually vacant.

Video evidence showed that Adams never stopped in the center turn lane before turning left into northbound traffic. Instead, he rolled through the center turn lane before turning left into the right northbound lane at approximately four miles per hour. Adams claimed that he looked down the right northbound lane and did not see anything. Adams was approximately halfway into Immanuel Lutheran's driveway when he heard screeching brakes, and plaintiff's vehicle collided with the passenger side of the school bus. Adams never saw plaintiff's vehicle before the collision. Plaintiff was unsure of the speed limit and could not remember exactly when he saw the school bus before the collision.

Plaintiff sued defendant, Adams, and Allstate Insurance Company for damages exceeding $25,000. Plaintiff alleged claims of negligence and gross negligence as to Adams. Further, plaintiff alleged that defendant was liable for Adams's negligence under MCL 691.1405.

Plaintiff's medical records indicated reduced range of motion and pain in plaintiff's cervical spine. Plaintiff's diagnostic studies indicated disc herniations in his cervical spine and in his lumbar spine, along with a grade 1 superior labrum anterior to posterior (SLAP) tear to his left shoulder. Plaintiff was provided a disability certificate restricting him from work, driving, and recreational activities, including lifting over 15 pounds. Additionally, Dr. Nicholas Dutcheshen, M.D., performed an insurance medical examination (IME)[1] of plaintiff and opined that plaintiff's complaints were "solely attributable to the accident." Moreover, Dr. Stephen Wilson, M.D., performed an IME of plaintiff and opined that the reviewed documents "support[ed] a causal relationship between the reported injuries of a cervical strain/sprain and the accident." Lastly, Dr. Todd B. Francis, M.D., performed an IME of plaintiff and opined that it was certainly possible that plaintiff sustained a herniated lumbar disc from the collision. Plaintiff testified that his injuries were not present before the collision, and he immediately felt pain in his hip after the accident. He also reported no surgeries or slip-and-fall incidents before the collision.

Defendant and Adams moved for summary disposition under MCR 2.116(C)(7) and (C)(10), alleging that they were immune from suit under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*. Defendant contended that plaintiff's sole theory of negligence—that Adams failed to yield the right of way before turning into plaintiff's lane of travel, in violation of MCL 257.649a(l)—lacked merit because defendant's accident reconstructionist established that plaintiff was speeding, so he forfeited his right of way. Defendant also argued that plaintiff did

---

[1] "Although the trial court and the parties refer to this examination as an 'independent medical examination,' " this Court has expressed a preference to identify such examinations "as an insurance medical examination." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 478 n 2; 997 NW2d 307 (2022). This is because "the commonly used phrase 'independent medical examination' is a 'euphemistic term of art.' In the insurance context, 'an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the "independence" of the examination somewhat questionable.' " *Id*., quoting *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022).

not suffer a serious impairment of a body function because plaintiff's injuries were not objectively manifested or attributable to the collision. The trial court denied defendant's motion for summary disposition, finding that a question of fact existed regarding whether Adams was negligent. The trial court also found that plaintiff suffered a threshold injury because he was provided disability certificates from his medical providers.

Defendant appealed the trial court's decision. While this appeal was pending, plaintiff moved to strike the issue of whether plaintiff suffered a serious impairment of a bodily function from appeal, arguing that this Court lacks jurisdiction to consider the issue because whether plaintiff suffered a threshold injury is an issue of liability not immunity. Defendant responded by arguing that plaintiff could only establish a claim under MCL 691.1405 if he suffered a serious impairment of a body function under MCL 500.3135; thus, this Court had jurisdiction to review this issue. We denied plaintiff's motion.[2]

## II. ANALYSIS

## A. STANDARDS OF REVIEW

"This Court reviews de novo motions for summary disposition brought pursuant to MCR 2.116(C)(7)." *Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153, 157; 641 NW2d 285 (2002). A trial court may grant a motion for summary disposition under MCR 2.116(C)(7) on the ground that a claim is barred because of immunity granted by law. To survive a motion raised under MCR 2.116(C)(7), the plaintiff must allege specific facts warranting the application of an exception to governmental immunity. *McLean v McElhaney*, 289 Mich App 592, 597; 798 NW2d 29 (2010). We have previously explained appellate review under MCR 2.116(C)(7) by stating:

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

Additionally, "the applicability of governmental immunity is a question of law that this Court reviews de novo." *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018) (quotation marks and citation omitted).

A motion made under MCR 2.116(C)(10) challenges the factual sufficiency of a claim and is appropriate when "there is no genuine issue with respect to any material fact and the moving

---

[2] *Brewer v Adams*, unpublished order of the Court of Appeals, entered April 22, 2025 (Docket No. 374512).

party is entitled to judgment as a matter of law." *Wood*, 323 Mich App at 415. "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## B.  MCL 691.1405

Defendant first argues that the trial court erred by denying defendant's motion for summary disposition because a reasonable juror could not find that Adams was negligent, as required under MCR 691.1405.  We disagree.

With limited exceptions, the GTLA grants governmental agencies broad immunity from tort liability when engaged in a government function.  See MCL 691.1407(1).  To overcome governmental immunity and impose tort liability on a government agency, "[a] plaintiff must plead their case in avoidance of immunity." *Mount Clemens Recreational Bowl, Inc v Dir of Dep't of Health & Human Servs*, 344 Mich App 227, 245; 998 NW2d 917 (2022).  "A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id.* (quotation marks and citation omitted).  Because a government agency has broad immunity from tort liability under the GTLA, the statutory exceptions must be narrowly construed. *Regan*, 249 Mich App at 158.

One such exception is MCL 691.1405, commonly referred to as the motor vehicle exception to governmental immunity.  The statute provides, in relevant part, that "[g]overnmental agencies shall be liable for bodily injury . . . resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner. . . ." MCL 691.1405.  It is undisputed in this case that defendant is a government agency and was engaged in the exercise of a government function at the time of the collision.  Defendant contends, however, that there is no evidence that Adams negligently operated the school bus.

"[T]o establish a prima facie negligence claim, a plaintiff must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012).  The Legislature can create a duty by statute, but not every statute creates such a duty. *Randall v Michigan High Sch Athletic Ass'n*, 334 Mich App 697, 720; 965 NW2d 690 (2020).  Whether a penal statute under the motor vehicle code establishes the duty owed in a negligence action is within the court's discretion.  See *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 87; 393 NW2d 356 (1986).  But generally, "the rule is that evidence of violation of a penal statute creates a rebuttable presumption of negligence." *Id.* at 86.

Plaintiff's primary theory of negligence is that Adams failed to yield the right of way in violation of MCL 257.649a(1) when he turned into Immanuel Lutheran's parking lot.  MCL 257.649a(1) addresses a motorist's responsibility when turning left across lanes of oncoming traffic as follows:

(1) The driver of a vehicle at a location other than an intersection intending to turn to the left across a lane of traffic traveling in the opposite direction shall yield the right-of-way to all vehicles approaching from the opposite direction that are so close to the driver as to constitute an immediate hazard.

Assuming arguendo that this provision established a duty of care owed to plaintiff, a question of fact exists regarding whether Adams breached that duty.

Defendant argues that the yielding requirement of MCL 257.649a(1) is nullified by plaintiff's own violation of MCL 257.627, which prohibits speeding. Undisputed expert testimony establishes that plaintiff was speeding, and defendant asserts that a speeding motorist forfeits the right of way under MCL 257.649(7). We disagree.

MCL 257.649(7) states, "The driver of a vehicle traveling at an unlawful speed forfeits a right of way that the driver might otherwise have *under this section*." (Emphasis added.) Notably, this section only concerns rights of way at intersections, and undisputedly, the parties in this case were not at an intersection. We do not extend forfeiture provisions "beyond the express terms of the statute." *Green v Richardson*, 69 Mich App 133, 139; 244 NW2d 385 (1976). Accordingly, we are not persuaded by defendant's claim that under MCL 257.649(7), plaintiff's speeding automatically forfeited his right of way and relieved Adams of the requirement to yield imposed by MCL 257.649a(1).

Even assuming that plaintiff forfeited his right of way, defendant appears to argue that plaintiff's forfeiture negated *all* potential negligence of Adams. This argument is not persuasive because our Supreme Court has held that even a "favored driver is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his 'right' simply because he is the favored driver." *McGuire v Rabaut*, 354 Mich 230, 235; 92 NW2d 299 (1958). Independent of any statutory obligations, a motorist owes a "duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Rowland v Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372120); slip op at 5 (quotation marks and citation omitted); *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956).

In light of these obligations, plaintiff correctly argued in the trial court that a question of fact existed whether Adams failed to exercise reasonable care and caution when making his turn. Video evidence showed that Adams failed to stop in the center turn lane before turning into plaintiff's lane of travel, despite Adams's claim that he stopped in the center turn lane for one to two minutes. Although certain situations may exist in which a motorist is not required to come to a complete stop before executing a turn, this determination is fact specific. Testimony established that, at the time of the collision, the left northbound lane was backed up with traffic. As a result, Adams could not turn without a courteous driver creating a sufficient gap in traffic. Given the level of traffic, a reasonable juror could conclude that Adams should have stopped and exercised greater caution, rather than coasting through the center turn lane, without stopping, and then immediately turning left through a gap created by traffic.

-5-

Moreover, a jury could rely on a reasonable inference to find that backed-up traffic can hinder a motorist's view of vehicles traveling in adjacent lanes. Although Adams testified that he did not see anything in the northbound lane, it is unclear whether this was because no traffic was present or because his view was obstructed. Therefore, even if plaintiff forfeited the right of away *and* Adams did not violate MCL 257.649a(1), a question of fact remained as to whether Adams breached his duty to exercise reasonable care and caution under the circumstances. Accordingly, the trial court did not err in denying defendant's motion for summary disposition.

Finally, a question of fact exists as to whether Adams's potential negligence was the factual and proximate cause of plaintiff's injuries. "In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (quotation marks and citation omitted). Proximate cause specifically examines the "foreseeability of consequences." *Id*. at 63. Here, a reasonable juror could find that, but for Adams failing to stop and exercise greater caution in his turn, the collision would not have occurred. Moreover, it is reasonably foreseeable that Adams's conduct would result in him not seeing plaintiff's vehicle. Even if plaintiff contributed to the accident by speeding, "[i]t is not uncommon that more than one proximate cause contributes to an injury." *Id*. at 65. Thus, a reasonable juror could conclude that Adams's potential negligence caused the collision, which led to plaintiff's injuries. Therefore, a question of fact exists as to whether Adams negligently caused the collision, and summary disposition was properly denied on this basis.

## C. MCL 500.3135

Next, defendant argues that the trial court erred in denying its motion for summary disposition because plaintiff failed to establish a question of fact as to whether plaintiff suffered a serious impairment of a body function under MCL 500.3135(1). We disagree.

As an initial matter, plaintiff asserts that we lack jurisdiction to review the trial court's decision denying summary disposition because whether plaintiff suffered a serious impairment of a body function under the no-fault act, MCL 500.3101 *et seq*., is a question of liability and not immunity. We disagree with this, too.

MCL 500.3135(1) allows a plaintiff to maintain an action for noneconomic tort damages upon "a showing that he has suffered death, serious impairment of body function, or permanent serious disfigurement." *Hardy v Oakland Co*, 461 Mich 561, 565; 607 NW2d 718 (2000) (quotation marks omitted), quoting MCL 500.3135(1). As noted, MCL 691.1405 provides that a government agency is liable for "*bodily injury* . . . resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." (Emphasis added.)

Plaintiff contends that to survive a motion for summary disposition and impose tort liability upon defendant under MCL 691.1405, he must only show that a question of fact exists regarding whether he suffered bodily injury under MCL 691.1405, and *then* he must prove that he suffered a threshold injury under MCL 500.3135(1) to recover noneconomic damages. Thus, plaintiff asserts that whether he suffered a threshold injury is a question of liability and not immunity. As

a result, he argues that we lack jurisdiction to review as of right whether the trial court correctly denied summary disposition on the basis that a question of fact existed regarding whether plaintiff suffered a threshold injury.

In making this argument, plaintiff relies on *Hannay v Dep't of Transp*, 497 Mich 45, 77 n 94; 860 NW2d 67 (2014), which provides:

> [W]hile a plaintiff must demonstrate "death, serious impairment of body function, or permanent serious disfigurement" to recover noneconomic damages in a third-party tort action, whether that requirement has been met is a question of liability, not immunity. As discussed earlier, to demonstrate immunity has been waived as to a claim for such damages, the GTLA, by its plain language, requires a showing of "bodily injury." Accordingly, while plaintiff Hunter's path to recovery of noneconomic damages from defendant Flint requires him to demonstrate both a "bodily injury" under the GTLA and a "serious impairment of body function" under the no-fault act, he need only clear the first such hurdle in opposing defendant Flint's motion for summary disposition under MCR 2.116(C)(7).

Despite this note discussing the interplay between the GTLA and the no-fault act, *Hannay* did not answer whether we have jurisdiction to determine whether the trial court correctly denied summary disposition based on governmental immunity on an appeal by right.

Instead, we find guidance in *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 436; 824 NW2d 318 (2012), which examined our broad jurisdiction to review a trial court's decision denying summary disposition based on governmental immunity. MCR 7.203(A) and MCR 7.202(6)(a)(v) give this Court jurisdiction to decide an appeal of right from an order denying governmental immunity under MCR 2.116(C)(7) or denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity. In *Seldon*, this Court recognized that, "regardless of the specific basis of the trial court's ruling on a motion for summary disposition, whenever the effect is to deny a defendant's claim of immunity, the trial court's decision is, in fact, 'an order denying governmental immunity,' and is reviewable under MCR 7.203(A) and MCR 7.202(6)(a)(v)." *Seldon*, 297 Mich App at 436, quoting *Walsh v Taylor*, 263 Mich App 618, 625; 689 NW2d 506 (2004). However, the appeal is limited to "the portion of the order with respect to which there is an appeal of right." *Seldon*, 297 Mich App at 436, quoting MCR 7.203(A)(1).

Clearly, the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(7) was effectively an order denying governmental immunity, which is appealable by right. And because the trial court denied defendant's motion, in part, because it found a question of fact existed regarding whether plaintiff suffered a threshold injury under MCL 500.3135(1), we conclude that we have jurisdiction to review the trial court's determination regarding the same.

Turning to the merits of defendant's argument, the trial court did not err by finding that a question of fact existed regarding whether plaintiff suffered a threshold injury, as required under MCL 500.3135(1). This provision permits recovery for noneconomic loss caused by the use of a motor vehicle when "the injured person has suffered death, serious impairment of body function,

or permanent serious disfigurement." MCL 500.3135(1). A "serious impairment of body function" must satisfy three prongs:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident. [MCL 500.3135(5).]

Regarding the first prong of the serious impairment of body function test, an " '[i]mpairment' is the state of being impaired . . . and to be 'impaired' means being weakened, diminished, or damaged or functioning poorly or inadequately." *McCormick v Carrier*, 487 Mich 180, 197; 795 NW2d 517 (2010) (quotation marks and citation omitted). Moreover, "an 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *Id*. at 196. In analyzing if an impairment is objectively manifested, the proper inquiry is not on the injury, but rather how the injuries affected a particular body function. *Id*. at 197. Ultimately, plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering, which may be established through medical testimony. *Id*. at 198.

Defendant argues that plaintiff fails the first prong because his diagnostic tests were negative for acute or traumatic injuries, and the physical examination notes regarding tenderness and limited range of motion were subjective. However, the record plainly supports "a physical basis" for subjective statements about pain. *Id*. at 198. Plaintiff's testimony that he experienced pain and reduced range of motion in his shoulder following the accident was supported by medical records diagnosing a labral SLAP tear to his left shoulder. Moreover, plaintiff's reported pain in his neck and lower back was supported by medical records indicating herniated discs in his cervical and lumbar spine. Plaintiff also provided evidence that his treating doctors disabled him from driving, returning to work, and engaging in recreational activities, including lifting over 15 pounds, which supports that these impairments diminished the functioning of plaintiff's shoulder, neck, and back. Moreover, plaintiff required help with household chores and taking his medications after the accident.

Defendant also argues that the diagnostic tests revealed only degenerative findings that were not attributable to the collision. But Dr. Wilson opined that a causal relationship existed between plaintiff's reported cervical strain and the collision. Additionally, Dr. Dutcheshen opined that plaintiff's complaints were "solely attributable" to the accident. Plaintiff also testified that he had never been treated for his complained-of injuries before the collision. Moreover, photographs of the accident, along with plaintiff's testimony that the airbags did not deploy, support an

inference that plaintiff's impairments were caused by the collision. A jury could thus reasonably conclude that the collision caused plaintiff's impairments. Therefore, we are not persuaded by defendant's argument that there is no genuine issue of material fact regarding the objective manifestation of plaintiff's impairment.

Defendant did not dispute whether the second prong of the serious impairment of body function test was met (that the impairment involved an important body function). As to the third prong,

> the common understanding of to "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in his or her normal manner of living. By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis. Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident. [*McCormick*, 487 Mich at 202.]

Importantly, "the statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*.

Defendant argues that plaintiff's general ability to lead his normal life has not been affected by the collision because no physician attributed his impairments to the collision and that any self-imposed limitations could have occurred regardless of the collision. However, as noted, plaintiff's doctors *did* attribute his impairments to the collision. And the doctors disabled him from work, driving, and recreational activities. Thus, a reasonable jury could find that the collision affected plaintiff's ability to lead his normal life. Therefore, when viewing the evidence in a light most favorable to plaintiff, the trial court did not err by finding that a genuine issues of material fact existed regarding whether plaintiff suffered a threshold injury.

Lastly, defendant argued that even if plaintiff suffered a threshold injury, his injuries did not "result from" the collision, as required by MCL 691.1405. Defendant failed to present this particular argument in his motion for summary disposition, making it unpreserved. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Unpreserved issues generally are prohibited from being raised for the first time on appeal, and we decline to exercise our discretion to overlook the preservation requirements. See *id*.

Affirmed and remanded. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

-9-